**HUDSON AND EADS, Inc., Appellant,**

v.

**Garland ENLOW, Appellee.**

No. 15807.

Court of Civil Appeals of Texas.

Fort Worth.

April 19, 1957.

Rehearing Denied May 24, 1957.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellant.

Grindstaff, Zellers & Hutcheson, and A. E. Zellers, Weatherford, for appellee.

BOYD, Justice.

Appellant Hudson and Eads, Inc., a corporation, appeals from a judgment overruling its plea of privilege to be sued in Wichita County, the county of its residence.

Appellee Garland Enlow sued appellant and Allen T. Strong for damages for personal injuries sustained by him in the course of his employment by Strong as a pumper on an oil lease. Appellant was servicing a well belonging to Strong; and, according to appellee's allegation, while standing by ready to assist Gibbs, appellant's employee, in servicing the well, a line check, or check valve, exploded, parts of which struck appellee in the frontal part of his head, and causing the injuries complained of. Appellee alleged that acts of negligence of Strong and appellant's employee were each proximate causes of his injuries.

Appellee's controverting affidavit sought to hold venue in Young County, the county where the injuries occurred, under subds. 4, 9, 9a, 23, and 29a, Article 1995, Vernon's Ann.Civ.St. In his brief, however, appellee says, "We shall confine this brief to the following exceptions of Article 1995, namely, Exception 9a of said statutes. Exception 23 of said statutes."

Subd. 9a of Article 1995 provides that a suit based upon negligence may be brought in the county where the negligence occurred, when it is established by the preponderance of the evidence that the negligent

act or omission was that of the defendant or his agent acting within the scope of his employment, and that such act or omission was a proximate cause of the damages complained of. Subd. 23 of that Article provides that suits against corporations may be maintained in the county in which the cause of action or a part thereof arose.

■ Under either subdivision, the burden was on appellee to prove that appellant was guilty of negligence which proximately caused his injuries. While subd. 23 is not limited in application to suits based upon negligence, appellee had the burden of showing that he had a cause of action against appellant, and the only cause of action asserted is one based on negligence. Rogers v. Fort Worth Poultry & Egg Co., Tex.Civ.App., 185 S.W.2d 165; Genecov v. Marcus, Tex.Civ.App., 285 S.W.2d 872.

In appellee's amended petition, which was made a part of his controverting affidavit, only one ground of negligence was alleged against appellant, as follows: "The defendant corporation, its agents, servants and employees, was at said time and place, guilty of negligence in the following particulars, to-wit: (a) In closing the stop on the flow line leading to the test tank and thereby developing pressure in said flow line which in turn caused the line check to blow out thereby causing injury to plaintiff as herein set out."

It is true that in his affidavit setting out his claim to venue under subd. 9, appellee said that "Gibbs negligently operated said equipment in adjusting the pressure by the use of a choke, or by other means well known to him, which in turn caused a portion of the equipment to strike the plaintiff," he ends that section of the affidavit with these words, "all of which is more fully alleged in said amended petition to which reference is here made."

In the paragraph of the controverting affidavit setting out the venue facts as to subd. 9a, appellee says: "The allegations of said petition are true, and plaintiff avers, and it is a fact, that this is a suit based upon negligence at common law, both active and passive, and of omission and commission, committed by the said Tom Gibbs in Young County, Texas, * * *. That said negligence was a proximate cause of the plaintiff's injuries as is more fully set out in said amended petition, * * *."

So, we think the allegation of negligence upon which appellee seeks to hold venue in Young County was that Gibbs closed a stop on the flow line. The question to be determined is whether there is evidence to support the allegation of negligence.

■ In Papas v. Harmon, 263 S.W.2d 269, 270, this court said:

"The specific grounds relied upon to confer venue must be set out in a controverting plea. No other facts can be considered, Gholson v. Thompson, Tex.Civ.App., 298 S.W. 318, and the plaintiff must prove the facts specifically alleged to bring the case within one of the exceptions. Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300; Longhorn Trucks, Inc., v. Bailes, Tex.Civ.App., 225 S.W.2d 642, mandate overruled; Morris Plan Bank of Fort Worth v. Ogden, Tex.Civ.App., 144 S.W.2d 998.

"No grounds can be considered in support of the venue except such as are set up in the controverting affidavit. Brown County Farmers' Association, Inc., v. Heid Bros., Inc., Tex.Civ.App., 37 S.W.2d 1067; Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63."

Appellee testified that in discharging his duties as a pumper for Strong, he was at Creswell Well No. 3 about 7 o'clock in the morning on the day of the accident; that the pressure was normal on the flow line and oil was flowing into the storage tank; at about 10:15 Tommy Gibbs, appellant's employee, came to the well to change the bottom hole choke; that witness was

at Creswell Well No. 2 when he looked up and saw Gibbs working at No. 3; appellee went to No. 3 to assist Gibbs.

"Q. When you got over there, what did you do? A. He was rigging up and we tried to run that choke. Well, it wouldn't go and so we run a tubing to the bottom about 2900 feet deep and he asked me if I thought that flow choke would go and I thought it would and we pulled the tubing out and tried to run the choke again. and it would only run around 18 or 20 feet, something like that.

"Q. Did you know what the trouble was? A. No, sir.

"Q. Do you know what trouble causes that kind of thing to happen? A. I don't know what would cause that choke to hang like it did unless it would be the cups holding and the pressure not equalized out.

"Q. What did you do to proceed with the work? A. We closed the flow choke and discovered that it wouldn't hold and we tried to break a union out so we could plug—put a bull plug on it, and it was leaking pressure and a little oil and we was going to put a bull plug on it but couldn't do it and we were just standing looking at it when that check valve blowed up and struck me in the forehead."

Appellee further testified that: the pressure tolerance on the check valve in question was 125 pounds; if the pressure was more than 125 pounds it would "blow out"; Gibbs was in charge of appellant's equipment and appellee was over there to help him; a flow valve was stopped; he did not turn it off; he did not know who was responsible for its being stopped; no one was there except Gibbs and himself; there had been no one at the well from 7:00 A.M.

until Gibbs came at 10:15; no valves were closed when he was there at 7 o'clock; closing them would build up pressure; immediately before the explosion the pressure on the casing was 1040 and on the tubing it was 560; he did not know whether Gibbs knew there was excessive pressure on the valve; Gibbs should have known what the pressure was, "It's there so anybody can see"; he did not see Gibbs change the stops or chokes; the accident was caused by pressure being built up somewhere; he did not see Gibbs do anything to cause the accident, and, on cross-examination, appellee said that he did not know whether the stops were open or shut when the accident happened.

Gibbs testified by deposition that he was attempting to change the bottom hole choke when the accident occurred. He was employed by appellant and appellant sent him to the well to do that servicing. He was not asked whether he closed any stop on the flow line.

We are unable to agree with appellee that he discharged the burden of showing that Gibbs closed the stop on the flow line; and, if appellee can be said to have alleged acts of negligence other than that, the evidence likewise fails to establish any of them. In order to hold venue in Young County, appellee must have established an act of negligence as alleged, and must have shown that such negligence was a proximate cause of his injuries. Papas v. Harmon, supra, and authorities there cited.

Accordingly, the judgment is reversed and here rendered sustaining the plea of privilege and ordering the venue, as to appellant, changed to Wichita County.